UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
OSAN LIMITED,                    )
                                 )
     Plaintiff,                  )     Civil Action No. 04-1296 (RWR)
                                 )
     v.                          )
                                 )
ACCENTURE LLP <u>et</u> <u>al.</u>,          )
                                 )
     Defendants.                 )
_____)

<u>MEMORANDUM OPINION AND ORDER</u>

In this diversity suit for fraud, plaintiff lodged venue in the District of Columbia.  Defendants moved to transfer venue pursuant to 28 U.S.C. § 1404(a), arguing that the balance of convenience to the parties and witnesses and the interest of justice warrant transfer to the Eastern District of New York.  Because venue in the District of Columbia is improper, but venue in the Eastern District of New York would be proper, defendants' motion to transfer this case to the United States District Court for the Eastern District of New York will be granted.

BACKGROUND

This lawsuit concerns a transaction whereby an entity not a party to this action, election.com, sold its assets to defendants Accenture Inc., Accenture LLP, and Accenture Ltd. trading as Accenture eDemocracy Services (collectively, the "Accenture defendants"), on terms memorialized in an Asset Purchase Agreement ("APA") dated May 7, 2003.  Defendant Clifford Jury, a

-2-

resident of Texas, is an associate partner with Accenture LLP who works from Accenture's Dallas office and was involved in valuing the assets to be acquired and negotiating the APA.  Defendant Meg McLaughlin, a resident of the District of Columbia, is a partner with Accenture LLP, and was the President of Accenture eDemocracy Services, which is based in Accenture's Reston, Virginia office.  Plaintiff Osan Ltd. ("Osan"), a foreign corporation that does not assert residence in the District of Columbia, was a shareholder and a creditor of election.com, and provided a limited guaranty and release of liens associated with the sale of assets, but was not a signatory to the APA.

Osan alleges that Jury, McLaughlin, and the Accenture defendants conspired to, and then did, misrepresent their buy-out plan for the acquisition of election.com.  Specifically, Osan alleges that it relied to its detriment and was defrauded when defendants knowingly misrepresented that they would pay $2,000,000 for election.com's assets, when in fact, defendants paid only $511,762.01.  Osan alleges that the misrepresentations occurred during the APA negotiations, which included negotiating a related limited guaranty by Osan and release of certain liens by Osan.  The alleged misrepresentations were memorialized in the APA, and thereafter restated in two letters from Meg McLauglin

-3-

sent to election.com[1] in the year following the execution of the APA.  (See Compl. ¶¶ 51, 56, 76, 103, 104; Pl.'s Opp'n to Mot. to Transfer ("Pl.'s Opp'n") at 3.)  Lawyers from Nixon Peabody LLP's Garden City office served as outside counsel for election.com during these negotiations.  (Jury Decl. ¶ 6.)  Stephen Glover and others from the Washington office of Gibson Dunn & Crutcher, LLP, served as outside counsel to Osan for the transactions related to the APA.  Glover and colleagues never participated in any face-to-face meetings with Accenture related to the APA.  (See Glover Decl. ¶ 8 (stating that no Gibson Dunn lawyers traveled to New York for any meetings on this matter); McLauglin Decl. ¶ 4 (implying that all face-to-face negotiations related to the APA occurred in New York); Jury Decl. ¶ 3-6 (same).)

The APA was negotiated primarily in New York.  Face-to-face negotiations occurred in Garden City, New York, but none occurred in the District of Columbia.  (Jury Decl. ¶¶ 3-6; McLaughlin Decl. ¶¶ 4, 5.)  Negotiations were also conducted by telephone between McLaughlin and Jury, representing Accenture, from their respective Accenture offices in Virginia and Texas, and Mark Prieto and Charles Smith, representing election.com, from the election.com office in Garden City, New York.  Charles Smith had a dual role in the negotiations, serving to represent the

---

[1] The letters were actually addressed to election.com's successor, Votation.com, Inc., but for ease of comprehension, reference will be made to election.com.

-4-

interests of both election.com and its principal shareholder,
Osan.  (McLauglin Decl. ¶ 4; Jury Decl. ¶¶ 3-6.)  Smith executed
the APA, dated May 7, 2003, for election.com while he was out of
the country (Smith Decl. ¶ 6); Accenture executed the APA on or
before June 1, 2003, in its Chicago offices, and the fully
executed copy was faxed to Accenture from the Garden City offices
of Nixon Peabody, LLP, counsel for election.com.  (McLaughlin
Decl. ¶ 6.)

     As contemplated by the APA, McLaughlin sent a letter to
election.com six months after the APA was executed, specifying
amounts owed pursuant to the terms of the APA.  Osan asserts that
this letter restates earlier misrepresentations and served to
effectuate the fraud.  The letter, dated December 12, 2003, was
signed by McLaughlin, printed on letterhead for the Accenture
office in Washington, D.C., and delivered to the attention of
Charles Smith at election.com at its New York address in an
envelope with a Washington, D.C. return address.  (See Pl.'s
Opp'n, Ex. C.)  According to McLaughlin's supplemental
declaration, the letter was drafted by her in the Virginia office
in consultation with colleagues in the Texas office, and was
printed for convenience sake at the Washington offices of
Accenture.  The Washington Accenture office had nothing to do
with the underlying transactions, has nothing to do with
Accenture eDemocracy Services, and does not maintain letterhead

-5-

for other Accenture offices.  (<u>See</u> McLaughlin Supp. Decl. ¶ 2-4.)

As also contemplated by the APA, McLaughlin sent a second letter

to election.com one year after the APA was executed, specifying

amounts owed pursuant to the terms of the APA.  Osan asserts that

this letter further effectuated defendants' fraud.  This letter,

dated June 1, 2004, was signed by McLauglin, printed on

letterhead for the Virginia office of Accenture, and delivered to

election.com at its New York offices to the attention of Charles

Smith.  (Pl.'s Opp'n, Ex. E.)

<u>DISCUSSION</u>

The federal general venue statute provides that

(a) A civil action wherein jurisdiction is founded only
on diversity of citizenship may, except as otherwise
provided by law, be brought only in (1) a judicial
district where any defendant resides, if all defendants
reside in the same State, (2) a judicial district in
which a substantial part of the events or omissions
giving rise to the claim occurred, or a substantial
part of the property that is the subject of the action
is situated, or (3) a judicial district in which any
defendant is subject to personal jurisdiction at the
time the action is commenced, if there is no district
in which the action may otherwise be brought.

28 U.S.C. § 1391(a).  If a case is filed in a judicial district

that does not satisfy the requirements of § 1391, then a district

court is empowered under 28 U.S.C. § 1406(a) to either dismiss or

transfer the case to a district where it could have been brought

in accord with § 1391.  Under 28 U.S.C. 1404(a), a court may "for

the convenience of the parties and witnesses, in the interest of

-6-

justice" transfer the case "to any other district or division where it might have been brought."

In a § 1404(a) transfer, the burden is on the moving party to show that transfer is warranted. DeLoach v. Philip Morris Cos., Inc., 132 F. Supp. 2d 22, 24 (D.D.C. 2000). The threshold question in a § 1404(a) determination is whether venue would be proper in the transferee district. When deciding a transfer motion under § 1404(a), a court considers and balances case-specific factors, including the private interests of the parties and witnesses and the related public interests. See Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 30 (1988); Trout Unlimited v. U.S. Dep't of Agric., 944 F. Supp. 13, 16 (D.D.C. 1996). Ultimately, if the balance of private interests and public interests favors transfer of venue, then the transferor court is within its discretion to grant a transfer. In this case, venue in the District of Columbia is improper and the interests of the parties and the interest of justice warrant transfer of venue to the Eastern District of New York.

I.   VENUE IN THE DISTRICT OF COLUMBIA

The record does not establish that all defendants are residents of the District of Columbia. Osan has pled no facts demonstrating that either defendants Jury or Accenture Ltd. is a resident of the District of Columbia. As a consequence,

-7-

plaintiff has not established venue in this district pursuant to § 1391(a)(1).

Venue in the District of Columbia cannot be premised on § 1391(a)(2) either, because plaintiff has not established that a "substantial part of the events or omissions giving rise to the claim" occurred in the District of Columbia.  28 U.S.C. § 1391(a)(2).  Plaintiff rests venue in this district on two facts.  First, Osan points to the December letter and notes that it was printed on letterhead for the Accenture office in Washington, D.C.  (See Pl.'s Opp'n at 3.)  McLaughlin's declarations, however, establish that her December letter had no meaningful connection to the District of Columbia, and that the letterhead was nothing more than a consequence of her use of a convenient office in which to print the letter.  Second, plaintiff notes that its outside counsel during the negotiations and execution of the APA and related legal instruments worked from offices in Washington, D.C., and argues that the alleged fraudulent statements were "directed to Osan's counsel in the District of Columbia."  (Pl.'s Opp'n at 3.)  The evidence does not support plaintiff's argument.  Defendants' representations were directed to the principal, election.com, in Garden City, New York, not to the attorneys for the principal's guarantor and shareholder.  Cf. Abramoff v. Shake Consulting, LLC, 288 F. Supp. 2d 1, 4 (D.D.C. 2004) (finding venue improper because a

-8-

substantial part of the events did not occur in the District of
Columbia, despite the fact that local attorneys negotiated and
executed the contract on behalf of the plaintiff in this
district).  Plaintiff does not controvert Jury's statement that
"Charles Smith was the only agent of Osan with whom Accenture had
significant direct contact."  (Jury Decl. ¶ 3; McLaughlin Decl.
¶ 4.)  Smith is a New York resident who works in Garden City.
(McLaughlin Decl. ¶ 4; Smith Decl. ¶ 3-4.)  Nothing in Osan's
factual submissions establishes that Osan's counsel ever had any
direct communication at all with defendants.  Plaintiff has not
produced any written communication from defendants directed to
Osan's counsel.  The Glover declaration establishes that Osan's
counsel did not engage in any face-to-face meetings with
defendants related to the APA.  Such attenuated facts fall short
of establishing that "a substantial part of the events or
omissions giving rise" to the fraud claim occurred in the
District of Columbia.  § 1391(a)(2).  Plaintiff itself
acknowledges that "the Reston, Virginia offices are the focal
point of activities associated with the purchased assets."
(Pl.'s Opp'n at 4.)

Venue in the District of Columbia cannot be premised on
§ 1391(a)(3) because the evidence demonstrates that in accord
with § 1391(a)(2) venue could rest in another district.
Therefore, venue pursuant to § 1391(a)(3) is not available.

-9-

Because venue in the District of Columbia is not proper, this
case is subject to being dismissed or transferred to a district
where venue would be proper.  § 1406(a).  Defendants have
requested transfer venue to the Eastern District of New York.

II.  VENUE IN THE EASTERN DISTRICT OF NEW YORK

A substantial part of the events giving rise to the claim
occurred in the Eastern District of New York, where the terms of
the APA were negotiated over the period of several months either
by telephone or in person, and where the December and June
letters were delivered to election.com.  Thus, venue in the
Eastern District of New York complies with the general
requirements codified in § 1391(a), and this action could have
been brought originally in the Eastern District of New York.[2]  In
addition, transfer to the Eastern District of New York is proper
under § 1404(a).

A. Private Interests Under § 1404(a)

When deciding a transfer motion, courts typically consider
six categories of inter-relating private interests including
(1) the plaintiff's choice of forum, (2) the defendants' choice
of forum, (3) where the claim arose, (4) the convenience of the

---

[2]  The Eastern District of New York is not necessarily the
only district in which venue could properly lie.  Plaintiff's
submissions suggest other potentially proper venues for this
case.  Other possible venues are not considered here, however,
because defendants have proposed transfer to the Eastern District
of New York pursuant to § 1404(a).

parties, (5) the convenience of the witnesses, and (6) the ease
of access to sources of proof.  <u>See</u> <u>Trout Unlimited</u>, 944 F. Supp.
at 16.

A plaintiff's choice of forum is generally accorded
deference, except when, as here, the claims arose elsewhere or
the plaintiff is not resident of and does not have any
substantial connection to the forum.  <u>See</u> <u>id.</u> at 16;
<u>Thayer/Patricof Educ. Funding, L.L.C. v. Pryor Res., Inc.</u>, 196 F.
Supp. 2d 21, 28 (D.D.C. 2004); <u>DeLoach</u>, 132 F. Supp. at 24.
Here, the events giving rise to the claim occurred not in the
District of Columbia, but in other judicial districts, including
the Eastern District of New York.  Plaintiff's fraud claims stem
from the business relationship between defendants and
election.com, which was centered in Garden City, New York, and in
which plaintiff had an interest.  The negotiations for the sale
of election.com assets to the Accenture defendants, and the
alleged misrepresentations that were part of that process,
occurred in New York over the period of more than six months.
The subsequent letters restating the alleged misrepresentations
and effectuating the fraud were addressed to and delivered to
election.com in Garden City.  In addition, plaintiff does not
assert that it is a resident or has substantial connections to
this forum.  Thus, both because the fraud claims arose elsewhere,

and because plaintiff has no significant connection with this
forum, plaintiff's choice of forum is not entitled to deference.

Defendants' choice of forum, unlike the plaintiff's choice
of forum, satisfies the venue requirements of § 1391(a)(2),
because a substantial part of the events or omissions giving rise
to the claim occurred in that district.  On balance, a transfer
can be presumed to serve the convenience of the parties, as
plaintiff is a foreign corporation and has not asserted
significant connections to this district, and defendants have
requested a transfer to the Eastern District of New York.
Further, defendant McLaughlin, a resident of this district, has
declared her willingness to submit to judicial process in the
Eastern District of New York (McLaughlin Decl. ¶ 11), as has
defendant Jury, a resident of Texas.  (Jury Decl. ¶ 9.)

The convenience of non-party witnesses will be served by
transfer, as well.  While probable witnesses are scattered and
any venue will require others to travel, as plaintiff
acknowledges (see Pl.'s Opp'n at 4), New York appears to be the
location of more of the probable witnesses than is any other
venue.  Most importantly, one of the chief negotiators for
election.com, Mark Prieto, is a New York resident with
employment-related claims pending against both election.com and
defendants.  (McLaughlin Decl. ¶ 8.)  As a subpoena could well be
required to secure his testimony, serving a subpoena upon him

holds far more promise in an action pending in New York than in one pending in this district.  Thus, as to Prieto, the issue is more than just convenience for him; it relates to ease of access by the parties to his proof.  See Trout Unlimited, 944 F. Supp. at 16 (noting that the importance of witness convenience arises when the witness may actually be unavailable for trial in one of the fora).  The documentary proof is also scattered over several districts.  No party has asserted that access to proof will be seriously affected or compromised by transfer of this action to the Eastern District of New York.

  B.  Public Interests Under § 1404(a)

      When assessing 28 U.S.C. § 1404(a) requests to transfer venue, this court must weigh private interests and public interests related to the controversy at hand to determine whether the interests of the parties and the interest of justice warrant transfer of venue.  Public interest factors include (1) the transferee court's familiarity with governing law, (2) the relative congestion of the courts involved, and (3) the local interest in deciding local controversies at home.  See Trout Unlimited, 944 F. Supp. 2d at 16.

      The submissions in this case suggest that the parties may litigate choice of law issues in this matter.  Without deciding those issues, it appears that New York law may govern this action.  The APA provides that laws of New York will govern any

-13-

matters relating to that agreement, and the limited guaranty provides that Osan, as guarantor, shall submit to the jurisdiction of any state or federal court in New York with respect to any action or proceeding relating to the limited guaranty.  Furthermore, the choice of law rule in the District of Columbia would dictate that "the law governing the plaintiff's claims is the law of the state with the most significant relationship to the matters at issue[,]" see Kafack v. Primerica Life Ins. Co., 934 F. Supp. 3, 8 (D.D.C. 1996), which in this case is New York.  A federal court in New York would be presumed to be familiar with the law that is likely to govern this action.

The parties have urged or resisted transfer on the basis of the relative congestion of the courts.  Both parties have submitted exhibits arguing that one docket is more efficient than the other.  The most recent data show that the median time to disposition in civil cases is 10.6 months in the District of Columbia and 10.8 months for the Eastern District of New York.[3] This difference is too small to provide a basis on which to decide this motion.

Courts also consider "the local [public] interest in deciding local controversies at home" when evaluating a transfer motion.  See Trout Unlimited, 944 F. Supp. 2d at 16.  This case

---

[3] See Table C-5, U.S. District Courts, Median Time Intervals From Filing to Disposition of Civil Cases Terminated, available at http://www.uscourts.gov/caseload2004/tables/C05Mar04.pdf

-14-

does not represent a controversy localized in Washington, D.C. The claims arose from an agreement negotiated and consummated in New York, in which plaintiff had an interest.  Plaintiff, however, has no significant connections to this district, and defendants' connection to this district is not meaningfully related to this controversy.  Accordingly, New York's interest in deciding this case weighs more strongly than does the District of Columbia's.

<u>CONCLUSION AND ORDER</u>

Because venue in the District of Columbia is not proper but would be proper in the Eastern District of New York, and because the private and public interests support transfer to the Eastern District of New York, this case, with any pending motions, will be transferred to the United States District Court for the Eastern District of New York.  Accordingly, it is hereby

ORDERED that defendants' motion to transfer venue [Dkt. 6] to the United States District Court for the Eastern District of New York be, and hereby is, GRANTED.  The Clerk of the Court is directed to transfer this case accordingly.

SIGNED this 30th day of September, 2005.


_____/s/_____
RICHARD W. ROBERTS
United States District Judge