UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| OSAN LIMITED, ) | |
| ) | |
|    Plaintiff, ) | Civil Action No. 04-1296 (RWR) |
| ) | |
|    v. ) | |
| ) | |
| ACCENTURE LLP <u>et al.</u>, ) | |
| ) | |
|    Defendants. ) | |
| ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

In this diversity suit for fraud, plaintiff lodged venue in the District of Columbia.  Defendants moved to transfer venue pursuant to 28 U.S.C. § 1404(a), arguing that the balance of convenience to the parties and witnesses and the interest of justice warrant transfer to the Eastern District of New York. Because venue in the District of Columbia is improper, but venue in the Eastern District of New York would be proper, defendants' motion to transfer this case to the United States District Court for the Eastern District of New York will be granted.

<u>BACKGROUND</u>

This lawsuit concerns a transaction whereby an entity not a party to this action, election.com, sold its assets to defendants Accenture Inc., Accenture LLP, and Accenture Ltd. trading as Accenture eDemocracy Services (collectively, the "Accenture defendants"), on terms memorialized in an Asset Purchase Agreement ("APA") dated May 7, 2003.  Defendant Clifford Jury, a

-2-

resident of Texas, is an associate partner with Accenture LLP who works from Accenture's Dallas office and was involved in valuing the assets to be acquired and negotiating the APA.  Defendant Meg McLaughlin, a resident of the District of Columbia, is a partner with Accenture LLP, and was the President of Accenture eDemocracy Services, which is based in Accenture's Reston, Virginia office. Plaintiff Osan Ltd. ("Osan"), a foreign corporation that does not assert residence in the District of Columbia, was a shareholder and a creditor of election.com, and provided a limited guaranty and release of liens associated with the sale of assets, but was not a signatory to the APA.

Osan alleges that Jury, McLaughlin, and the Accenture defendants conspired to, and then did, misrepresent their buy-out plan for the acquisition of election.com.  Specifically, Osan alleges that it relied to its detriment and was defrauded when defendants knowingly misrepresented that they would pay $2,000,000 for election.com's assets, when in fact, defendants paid only $511,762.01.  Osan alleges that the misrepresentations occurred during the APA negotiations, which included negotiating a related limited guaranty by Osan and release of certain liens by Osan.  The alleged misrepresentations were memorialized in the APA, and thereafter restated in two letters from Meg McLauglin

sent to election.com[1] in the year following the execution of the
APA.  (See Compl. ¶¶ 51, 56, 76, 103, 104; Pl.'s Opp'n to Mot. to
Transfer ("Pl.'s Opp'n") at 3.)  Lawyers from Nixon Peabody LLP's
Garden City office served as outside counsel for election.com
during these negotiations.  (Jury Decl. ¶ 6.)  Stephen Glover and
others from the Washington office of Gibson Dunn & Crutcher, LLP,
served as outside counsel to Osan for the transactions related to
the APA.  Glover and colleagues never participated in any face-
to-face meetings with Accenture related to the APA.  (See Glover
Decl. ¶ 8 (stating that no Gibson Dunn lawyers traveled to New
York for any meetings on this matter); McLauglin Decl. ¶ 4
(implying that all face-to-face negotiations related to the APA
occurred in New York); Jury Decl. ¶ 3-6 (same).)

The APA was negotiated primarily in New York.  Face-to-face
negotiations occurred in Garden City, New York, but none occurred
in the District of Columbia.  (Jury Decl. ¶¶ 3-6; McLaughlin
Decl. ¶¶ 4, 5.)  Negotiations were also conducted by telephone
between McLaughlin and Jury, representing Accenture, from their
respective Accenture offices in Virginia and Texas, and Mark
Prieto and Charles Smith, representing election.com, from the
election.com office in Garden City, New York.  Charles Smith had
a dual role in the negotiations, serving to represent the

---

[1] The letters were actually addressed to election.com's
successor, Votation.com, Inc., but for ease of comprehension,
reference will be made to election.com.

-4-

interests of both election.com and its principal shareholder,
Osan.  (McLauglin Decl. ¶ 4; Jury Decl. ¶¶ 3-6.)  Smith executed
the APA, dated May 7, 2003, for election.com while he was out of
the country (Smith Decl. ¶ 6); Accenture executed the APA on or
before June 1, 2003, in its Chicago offices, and the fully
executed copy was faxed to Accenture from the Garden City offices
of Nixon Peabody, LLP, counsel for election.com.  (McLaughlin
Decl. ¶ 6.)

    As contemplated by the APA, McLaughlin sent a letter to
election.com six months after the APA was executed, specifying
amounts owed pursuant to the terms of the APA.  Osan asserts that
this letter restates earlier misrepresentations and served to
effectuate the fraud.  The letter, dated December 12, 2003, was
signed by McLaughlin, printed on letterhead for the Accenture
office in Washington, D.C., and delivered to the attention of
Charles Smith at election.com at its New York address in an
envelope with a Washington, D.C. return address.  (See Pl.'s
Opp'n, Ex. C.)  According to McLaughlin's supplemental
declaration, the letter was drafted by her in the Virginia office
in consultation with colleagues in the Texas office, and was
printed for convenience sake at the Washington offices of
Accenture.  The Washington Accenture office had nothing to do
with the underlying transactions, has nothing to do with
Accenture eDemocracy Services, and does not maintain letterhead

-5-

for other Accenture offices.  (See McLaughlin Supp. Decl. ¶ 2-4.)

As also contemplated by the APA, McLaughlin sent a second letter

to election.com one year after the APA was executed, specifying

amounts owed pursuant to the terms of the APA.  Osan asserts that

this letter further effectuated defendants' fraud.  This letter,

dated June 1, 2004, was signed by McLauglin, printed on

letterhead for the Virginia office of Accenture, and delivered to

election.com at its New York offices to the attention of Charles

Smith.  (Pl.'s Opp'n, Ex. E.)

## DISCUSSION

The federal general venue statute provides that

> (a) A civil action wherein jurisdiction is founded only
> on diversity of citizenship may, except as otherwise
> provided by law, be brought only in (1) a judicial
> district where any defendant resides, if all defendants
> reside in the same State, (2) a judicial district in
> which a substantial part of the events or omissions
> giving rise to the claim occurred, or a substantial
> part of the property that is the subject of the action
> is situated, or (3) a judicial district in which any
> defendant is subject to personal jurisdiction at the
> time the action is commenced, if there is no district
> in which the action may otherwise be brought.

28 U.S.C. § 1391(a).  If a case is filed in a judicial district

that does not satisfy the requirements of § 1391, then a district

court is empowered under 28 U.S.C. § 1406(a) to either dismiss or

transfer the case to a district where it could have been brought

in accord with § 1391.  Under 28 U.S.C. 1404(a), a court may "for

the convenience of the parties and witnesses, in the interest of

-6-

justice" transfer the case "to any other district or division where it might have been brought."

In a § 1404(a) transfer, the burden is on the moving party to show that transfer is warranted. <u>DeLoach v. Philip Morris Cos., Inc.</u>, 132 F. Supp. 2d 22, 24 (D.D.C. 2000). The threshold question in a § 1404(a) determination is whether venue would be proper in the transferee district. When deciding a transfer motion under § 1404(a), a court considers and balances case-specific factors, including the private interests of the parties and witnesses and the related public interests. <u>See</u> <u>Stewart Org., Inc. v. Ricoh Corp.</u>, 487 U.S. 22, 30 (1988); <u>Trout Unlimited v. U.S. Dep't of Agric.</u>, 944 F. Supp. 13, 16 (D.D.C. 1996). Ultimately, if the balance of private interests and public interests favors transfer of venue, then the transferor court is within its discretion to grant a transfer. In this case, venue in the District of Columbia is improper and the interests of the parties and the interest of justice warrant transfer of venue to the Eastern District of New York.

I.    VENUE IN THE DISTRICT OF COLUMBIA

The record does not establish that all defendants are residents of the District of Columbia. Osan has pled no facts demonstrating that either defendants Jury or Accenture Ltd. is a resident of the District of Columbia. As a consequence,

-7-

plaintiff has not established venue in this district pursuant to
§ 1391(a)(1).

Venue in the District of Columbia cannot be premised on
§ 1391(a)(2) either, because plaintiff has not established that a
"substantial part of the events or omissions giving rise to the
claim" occurred in the District of Columbia.  28 U.S.C.
§ 1391(a)(2).  Plaintiff rests venue in this district on two
facts.  First, Osan points to the December letter and notes that
it was printed on letterhead for the Accenture office in
Washington, D.C.  (See Pl.'s Opp'n at 3.)  McLaughlin's
declarations, however, establish that her December letter had no
meaningful connection to the District of Columbia, and that the
letterhead was nothing more than a consequence of her use of a
convenient office in which to print the letter.  Second,
plaintiff notes that its outside counsel during the negotiations
and execution of the APA and related legal instruments worked
from offices in Washington, D.C., and argues that the alleged
fraudulent statements were "directed to Osan's counsel in the
District of Columbia."  (Pl.'s Opp'n at 3.)  The evidence does
not support plaintiff's argument.  Defendants' representations
were directed to the principal, election.com, in Garden City, New
York, not to the attorneys for the principal's guarantor and
shareholder.  Cf. Abramoff v. Shake Consulting, LLC, 288 F. Supp.
2d 1, 4 (D.D.C. 2004) (finding venue improper because a

-8-

substantial part of the events did not occur in the District of
Columbia, despite the fact that local attorneys negotiated and
executed the contract on behalf of the plaintiff in this
district).  Plaintiff does not controvert Jury's statement that
"Charles Smith was the only agent of Osan with whom Accenture had
significant direct contact."  (Jury Decl. ¶ 3; McLaughlin Decl.
¶ 4.)  Smith is a New York resident who works in Garden City.
(McLaughlin Decl. ¶ 4; Smith Decl. ¶ 3-4.)  Nothing in Osan's
factual submissions establishes that Osan's counsel ever had any
direct communication at all with defendants.  Plaintiff has not
produced any written communication from defendants directed to
Osan's counsel.  The Glover declaration establishes that Osan's
counsel did not engage in any face-to-face meetings with
defendants related to the APA.  Such attenuated facts fall short
of establishing that "a substantial part of the events or
omissions giving rise" to the fraud claim occurred in the
District of Columbia.  § 1391(a)(2).  Plaintiff itself
acknowledges that "the Reston, Virginia offices are the focal
point of activities associated with the purchased assets."
(Pl.'s Opp'n at 4.)

     Venue in the District of Columbia cannot be premised on
§ 1391(a)(3) because the evidence demonstrates that in accord
with § 1391(a)(2) venue could rest in another district.
Therefore, venue pursuant to § 1391(a)(3) is not available.

-9-

Because venue in the District of Columbia is not proper, this case is subject to being dismissed or transferred to a district where venue would be proper.  § 1406(a).  Defendants have requested transfer venue to the Eastern District of New York.

II.  VENUE IN THE EASTERN DISTRICT OF NEW YORK

A substantial part of the events giving rise to the claim occurred in the Eastern District of New York, where the terms of the APA were negotiated over the period of several months either by telephone or in person, and where the December and June letters were delivered to election.com.  Thus, venue in the Eastern District of New York complies with the general requirements codified in § 1391(a), and this action could have been brought originally in the Eastern District of New York.[2]  In addition, transfer to the Eastern District of New York is proper under § 1404(a).

A. Private Interests Under § 1404(a)

When deciding a transfer motion, courts typically consider six categories of inter-relating private interests including (1) the plaintiff's choice of forum, (2) the defendants' choice of forum, (3) where the claim arose, (4) the convenience of the

---

[2]  The Eastern District of New York is not necessarily the only district in which venue could properly lie.  Plaintiff's submissions suggest other potentially proper venues for this case.  Other possible venues are not considered here, however, because defendants have proposed transfer to the Eastern District of New York pursuant to § 1404(a).

-10-

parties, (5) the convenience of the witnesses, and (6) the ease
of access to sources of proof.  See Trout Unlimited, 944 F. Supp.
at 16.

A plaintiff's choice of forum is generally accorded
deference, except when, as here, the claims arose elsewhere or
the plaintiff is not resident of and does not have any
substantial connection to the forum.  See id. at 16;
Thayer/Patricof Educ. Funding, L.L.C. v. Pryor Res., Inc., 196 F.
Supp. 2d 21, 28 (D.D.C. 2004); DeLoach, 132 F. Supp. at 24.
Here, the events giving rise to the claim occurred not in the
District of Columbia, but in other judicial districts, including
the Eastern District of New York.  Plaintiff's fraud claims stem
from the business relationship between defendants and
election.com, which was centered in Garden City, New York, and in
which plaintiff had an interest.  The negotiations for the sale
of election.com assets to the Accenture defendants, and the
alleged misrepresentations that were part of that process,
occurred in New York over the period of more than six months.
The subsequent letters restating the alleged misrepresentations
and effectuating the fraud were addressed to and delivered to
election.com in Garden City.  In addition, plaintiff does not
assert that it is a resident or has substantial connections to
this forum.  Thus, both because the fraud claims arose elsewhere,

and because plaintiff has no significant connection with this forum, plaintiff's choice of forum is not entitled to deference.

Defendants' choice of forum, unlike the plaintiff's choice of forum, satisfies the venue requirements of § 1391(a)(2), because a substantial part of the events or omissions giving rise to the claim occurred in that district.  On balance, a transfer can be presumed to serve the convenience of the parties, as plaintiff is a foreign corporation and has not asserted significant connections to this district, and defendants have requested a transfer to the Eastern District of New York.  Further, defendant McLaughlin, a resident of this district, has declared her willingness to submit to judicial process in the Eastern District of New York (McLaughlin Decl. ¶ 11), as has defendant Jury, a resident of Texas.  (Jury Decl. ¶ 9.)

The convenience of non-party witnesses will be served by transfer, as well.  While probable witnesses are scattered and any venue will require others to travel, as plaintiff acknowledges (see Pl.'s Opp'n at 4), New York appears to be the location of more of the probable witnesses than is any other venue.  Most importantly, one of the chief negotiators for election.com, Mark Prieto, is a New York resident with employment-related claims pending against both election.com and defendants.  (McLaughlin Decl. ¶ 8.)  As a subpoena could well be required to secure his testimony, serving a subpoena upon him

-12-

holds far more promise in an action pending in New York than in
one pending in this district.  Thus, as to Prieto, the issue is
more than just convenience for him; it relates to ease of access
by the parties to his proof.  See Trout Unlimited, 944 F. Supp.
at 16 (noting that the importance of witness convenience arises
when the witness may actually be unavailable for trial in one of
the fora).  The documentary proof is also scattered over several
districts.  No party has asserted that access to proof will be
seriously affected or compromised by transfer of this action to
the Eastern District of New York.

    B.  Public Interests Under § 1404(a)

    When assessing 28 U.S.C. § 1404(a) requests to transfer
venue, this court must weigh private interests and public
interests related to the controversy at hand to determine whether
the interests of the parties and the interest of justice warrant
transfer of venue.  Public interest factors include (1) the
transferee court's familiarity with governing law, (2) the
relative congestion of the courts involved, and (3) the local
interest in deciding local controversies at home.  See Trout
Unlimited, 944 F. Supp. 2d at 16.

    The submissions in this case suggest that the parties may
litigate choice of law issues in this matter.  Without deciding
those issues, it appears that New York law may govern this
action.  The APA provides that laws of New York will govern any

-13-

matters relating to that agreement, and the limited guaranty
provides that Osan, as guarantor, shall submit to the
jurisdiction of any state or federal court in New York with
respect to any action or proceeding relating to the limited
guaranty.  Furthermore, the choice of law rule in the District of
Columbia would dictate that "the law governing the plaintiff's
claims is the law of the state with the most significant
relationship to the matters at issue[,]" see Kafack v. Primerica
Life Ins. Co., 934 F. Supp. 3, 8 (D.D.C. 1996), which in this
case is New York.  A federal court in New York would be presumed
to be familiar with the law that is likely to govern this action.

      The parties have urged or resisted transfer on the basis of
the relative congestion of the courts.  Both parties have
submitted exhibits arguing that one docket is more efficient than
the other.  The most recent data show that the median time to
disposition in civil cases is 10.6 months in the District of
Columbia and 10.8 months for the Eastern District of New York.[3]
This difference is too small to provide a basis on which to
decide this motion.

      Courts also consider "the local [public] interest in
deciding local controversies at home" when evaluating a transfer
motion.  See Trout Unlimited, 944 F. Supp. 2d at 16.  This case

---

      [3] See Table C-5, U.S. District Courts, Median Time Intervals
From Filing to Disposition of Civil Cases Terminated, available
at http://www.uscourts.gov/caseload2004/tables/C05Mar04.pdf

-14-

does not represent a controversy localized in Washington, D.C. The claims arose from an agreement negotiated and consummated in New York, in which plaintiff had an interest.  Plaintiff, however, has no significant connections to this district, and defendants' connection to this district is not meaningfully related to this controversy.  Accordingly, New York's interest in deciding this case weighs more strongly than does the District of Columbia's.

<u>CONCLUSION AND ORDER</u>

Because venue in the District of Columbia is not proper but would be proper in the Eastern District of New York, and because the private and public interests support transfer to the Eastern District of New York, this case, with any pending motions, will be transferred to the United States District Court for the Eastern District of New York.  Accordingly, it is hereby

ORDERED that defendants' motion to transfer venue [Dkt. 6] to the United States District Court for the Eastern District of New York be, and hereby is, GRANTED.  The Clerk of the Court is directed to transfer this case accordingly.

SIGNED this 30th day of September, 2005.


_____/s/_____
RICHARD W. ROBERTS
United States District Judge